IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | :<br>:<br>: |
| Plaintiff, | :  CIVIL ACTION NO.<br>: |
| v. | :<br>: |
| SIRDAH ENTERPRISES, INC. d/b/a TABOO 2 BAR & BISTRO, | :  JURY TRIAL DEMAND<br>:<br>: |
| Defendant. | :<br>: |

## COMPLAINT

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex and to provide appropriate relief to Sheila Smith, Somone Wimbley, Ashleigh Mills, Lisa McDaniel, Jasmine Mitchell and Ebony Tompkins who were adversely affected by such practices. The Plaintiff alleges that the aforementioned females were unlawfully subjected to a hostile work environment based on sex and/or quid pro quo sex harassment by the Defendant. The Plaintiff further alleges that Sheila Smith, Ashleigh Mills, Lisa

McDaniel, Jasmine Mitchell and Ebony Tompkins were constructively discharged due to the sexual harassment.

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division.

## PARTIES

3.     Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 28 U.S.C. § 2000e-5(f)(1) and (3).

4.   At all relevant times, Defendant has continuously been a corporation doing business in the State of Georgia and city of Sandy Springs and has continuously had at least 15 employees.

5.   At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS – SEX HARASSMENT

6.   More than thirty days prior to the institution of this lawsuit, Smith, Wimbley, Mills, McDaniel, Mitchell and Tompkins each filed a charge of discrimination with the Commission alleging violations of Title VII by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

7.   Since at least November 2010, Defendant engaged in unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. §2000e-2(a) by:

   (a)   subjecting Smith, Wimbley, Mills, McDaniel, Mitchell and Tompkins to repeated incidents of verbal and physical harassment which resulted in a hostile work environment based on sex; and

(b) subjecting Smith, Wimbley, Mills, Mitchell and Tompkins to quid pro quo sex harassment by conditioning work assignments, discipline, work scheduling and earning potential on submission to sexual favors.

8. Sheila Smith began working for Defendant in or around June 2012 as a server, and stopped working for Defendant in September 2012.

9. Through most of the term of her employment Smith was subjected to unwelcome sexual comments, physical touching and indecent exposures by manager Dartez Daniel.

10. Manager Daniel subjected Smith to unwelcome groping of her body in a sexual manner, explicit sex related comments, requests for sexual favors, and promises of better working assignments and monetary benefits if she engaged in sexual acts.

11. The unlawful conduct to which Smith was subjected included by way of example manager Daniel repeatedly exposing his penis to Smith and requesting that she touch it or perform oral sex.

12. The unlawful conduct to which Smith was subjected included by way of example manager Daniel rubbing his crotch against her.

13. The totality of such conduct had the effect of creating a hostile work environment based on sex for Smith.

14. In response to Smith's rejection of Daniel's sexual advances, Daniel refused to assign her to job duties which would allow her to earn higher wages and negatively changed her work schedule, which resulted in less earning opportunities.

15. The Defendant's refusal to assign Smith to higher earning work assignments and reduction of her work hours because of her rejection of Daniel's sexual advances constituted quid pro quo sexual harassment.

16. The totality of such conduct along with the sexually harassing conduct of others that Smith witnessed had the effect of creating a hostile work environment based on sex for Smith.

17. Somone Wimbley began working for Defendant in or around February 2012 as a server, and stopped working for Defendant in August 2012.

18. Throughout the term of her employment Wimbley was subjected to unwelcome sexual comments and physical touching by manager Dartez Daniel.

19. The unlawful conduct to which Wimbley was subjected included by way of example Daniel repeatedly rubbing his hands on Wimbley's breasts and groping her buttocks.

20. The unlawful conduct to which Wimbley was subjected also included owner and manager Thomas Dixon attempting to guess Wimbley's bra size, telling her that he wanted her to be his girlfriend, and offering Wimbley living arrangements in a condominium in exchange for sexual favors.

21. Manager Daniel offered to forego work related discipline for Wimbley in exchange for sex, and on another occasion offered to cover a cash shortage for Wimbley in exchange for sex.

22. Defendant diminished Wimbley's work hours after her rejection of sexual advances by manager Daniel. Such conduct constituted quid pro quo sexual harassment.

23. The totality of the unlawful conduct to which Wimbley was subjected, along with the sexually harassing conduct of others that she witnessed, had the effect of creating a hostile work environment based on sex for Wimbley.

24. Ashleigh Mills began working for Defendant in or around March 2011 as a server/bartender, and stopped working for Defendant in September 2012.

25. Throughout the term of her employment Mills was subjected to unwelcome sexual comments and physical touching by manager Dartez Daniel.

26. The unlawful conduct to which Mills was subjected included by way of example manager Daniel repeatedly touching Mills' breasts, groping her buttocks, and rubbing his crotch area against her body.

27. The unlawful conduct to which Mills was subjected included by way of example manager Daniel exposing his penis to Mills and stating, "I want to see what your mouth feels like."

28. Manager Daniel informed Mills that her work related benefits were conditioned upon her submission to sexual favors.

29. In response to Mills' rejection of sexual advances by manager Daniel, she was assigned to less profitable sections of the restaurant and her work schedule was negatively affected.

30. Defendant's assignment of Mills to less profitable sections of the restaurant and changing her work schedule after her rejection of sexual advances by manager Daniel constituted quid pro quo sexual harassment.

31. The totality of such conduct along with the sexually harassing conduct of others that Mills witnessed had the effect of creating a hostile work environment based on sex for Mills.

32. Lisa McDaniel began working for Defendant in or around November 2010 as a server, and stopped working for Defendant in September 2012.

33. Throughout the term of her employment McDaniel was subjected to unwelcome sexual comments and physical touching by manager Dartez Daniel.

34. The unlawful conduct to which McDaniel was subjected included by way of example manager Daniel repeatedly making comments of a sexual nature, repeatedly groping her buttocks, and requesting to come to her house for sexual favors.

35. The unlawful conduct to which McDaniel was subjected also included by way of example owner and manager Thomas Dixon talking about the size of his penis.

36. The totality of the unlawful conduct to which McDaniel was subjected, along with the sexually harassing conduct of others that she witnessed had the effect of creating a hostile work environment based on sex for McDaniel.

37. Jasmine Mitchell began working for Defendant in or around February 2012 as a server, and stopped working for Defendant in September 2012.

38. Throughout the term of her employment Mitchell was subjected to unwelcome sexual comments and physical touching by manager Dartez Daniel.

39. The unlawful conduct to which Mitchell was subjected included by way of example manager Daniel repeatedly touching her breasts, groping her buttocks, making sexually explicit comments, and asking for sexual favors.

40. The unlawful conduct to which Mitchell was subjected included by way of example manager Daniel telling her that she should perform oral sex for him in exchange for him assigning her to a section of the restaurant where she could earn higher tips.

41. The unlawful conduct to which Mitchell was subjected included manager Daniel offering to give Mitchell a job assignment in exchange for sexual favors, and refusing to give the assignment to Mitchell when she refused.

42. Defendant's assignment of Mitchell to less profitable sections of the restaurant after her rejection of sexual advances by manager Daniel constituted quid pro quo sexual harassment.

43. The totality of the unlawful conduct to which Mitchell was subjected, along with the sexually harassing conduct of others that she witnessed, had the effect of creating a hostile work environment based on sex for Mitchell.

44. Ebony Tompkins began working for Defendant in or around April 2012 as a server, and stopped working for Defendant in September 2012.

45. Throughout the term of her employment Tompkins was subjected to unwelcome sexual comments and physical touching by manager Dartez Daniel.

46. The unlawful conduct to which Tompkins was subjected included by way of example manager Daniel repeatedly touching her breasts and her buttocks,

making sexually explicit comments, and asking for sexual favors.

47. In response to Tompkins' rejection of sexual advances by manager Daniel, she was assigned to less profitable sections of the restaurant, and assigned to tasks which resulted in her earning little or no compensation.

48. Defendant's assignment of Tompkins to less profitable sections of the restaurant and negatively altering her work schedule after her rejection of sexual advances by manager Daniel constituted quid pro quo sexual harassment.

49. The totality of the unlawful conduct to which Tompkins was subjected, along with the sexually harassing conduct of others that she witnessed had the effect of creating a hostile work environment based on sex for Tompkins.

50. Smith, Wimbley, Mills, McDaniel, Mitchell and other employees complained to Defendant's managers about the unwelcomed sex-based conduct. However, Defendant failed to take any measures reasonably calculated to stop the harassment or prevent it from recurring.

## **CONSTRUCTIVE DISCHARGE**

51. The duration and totality of the sexually offensive conduct to which Smith was subjected, and Defendant's demonstrated failure to stop the conduct, made her working conditions so intolerable that Smith was compelled to resign.

52. The duration and totality of the sexually offensive conduct to which

Mills was subjected, and Defendant's demonstrated failure to stop the conduct, made her working conditions so intolerable that Mills was compelled to resign.

53. The duration and totality of the sexually offensive conduct to which McDaniel was subjected, and Defendant's demonstrated failure to stop the conduct, made her working conditions so intolerable that McDaniel was compelled to resign.

54. The duration and totality of the sexually offensive conduct to which Mitchell was subjected, and Defendant's demonstrated failure to stop the conduct, made her working conditions so intolerable that Mitchell was compelled to resign.

55. The duration and totality of the sexually offensive conduct to which Tompkins was subjected, and Defendant's demonstrated failure to stop the conduct, made her working conditions so intolerable that Tompkins was compelled to resign.

56. The effects of the practices complained of in paragraphs 7-55 above have been to deprive Smith, Wimbley, Mills, McDaniel, Mitchell and Tompkins of equal employment opportunities and otherwise adversely affect their status as employees because of their sex.

58. The unlawful employment practices complained of in paragraph 7-55 above were intentional and were carried out with malice and/or reckless

indifference to the federally protected rights of Smith, Wimbley, Mills, McDaniel, Mitchell and Tompkins.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A.   Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with it, from engaging in sexual harassment against employees and engaging in any other employment practice which discriminates on the basis of sex.

B.   Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees and which eradicate the effects of its past and present unlawful employment practices.

C.   Order Defendant to make whole Smith, Mills, McDaniel, Mitchell and Tompkins, who were adversely affected by Defendant's discriminatory conduct, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D.   Order Defendant to make whole Smith, Wimbley, Mills, McDaniel, Mitchell and Tompkins by providing compensation for past and future pecuniary

losses resulting from the unlawful employment practices described above, including job search expenses, in amounts to be determined at trial.

E.     Order Defendant to make whole Smith, Wimbley, Mills, McDaniel, Mitchell and Tompkins by providing compensation for non-pecuniary losses resulting from the unlawful employment practices described above, including emotional pain and suffering, anxiety, stress, depression, and humiliation, in amounts to be determined at trial.

F.     Order Defendant to pay to Smith, Wimbley, Mills, McDaniel, Mitchell and Tompkins punitive damages for Defendant's malicious and reckless conduct described above, in amounts to be determined at trial.

G.     Grant such further relief as the Court deems necessary and proper.

H.     Award the Commission its costs in this action.

*[Signature page follows]*

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

                                                Respectfully submitted,

                                                P. DAVID LOPEZ
                                                General Counsel

                                                JAMES L. LEE
                                                Deputy General Counsel

                                                GWENDOLYN YOUNG REAMS
                                                Associate General Counsel

| | |
|---|---|
| November 5, 2013 | s/ Robert K. Dawkins |
| Date | Robert K. Dawkins |
| | Regional Attorney |
| | Georgia Bar No. 076206 |
| | robert.dawkins@eeoc.gov |
| | |
| Sairalina Montesino | Ottrell Edwards |
| Trial Attorney | Supervisory Trial Attorney |
| Georgia Bar No. 940665 | Georgia Bar No. 141979 |
| sairalina.montesino@eeoc.gov | ottrell.edwards@eeoc.gov |

                                                U.S. Equal Employment Opportunity Commission
                                                Atlanta District Office
                                                100 Alabama St., SW, Suite 4R30
                                                Atlanta, Georgia 30303
                                                Telephone:  (404) 562-6818
                                                Facsimile:   (404) 562-6905